UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BASEEMAH WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-02267-JPH-CSW |
| | ) | |
| DOUGLAS TULINO Acting Postmaster General, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING MOTIONS FOR NEW TRIAL**

On February 5, 2026, the Court held a jury trial in this case, which resulted in a verdict in favor of the Defendant, the Postmaster General, on Plaintiff Baseemah Williams's race-based hostile work environment claim.  Ms. Williams filed two motions for a new trial under Federal Rule of Civil Procedure 59(a).  Dkt. [183]; dkt. [185].  For the reasons below, those motions are **DENIED.**

**I.**
**Facts and procedural background**

Ms. Williams, a Black woman and former U.S. Postal Service employee, sued the Postmaster General for assault, retaliatory discharge, wrongful termination, and for a hostile work environment based on her race and age. After this Court granted summary judgment for the Postmaster, Ms. Williams appealed and the Seventh Circuit affirmed except on Ms. Williams's claim that she was subjected to a racially hostile work environment at the Carmel Post Office.  Dkt. 122; dkt. 138 (USCA Mandate).  For that claim, Ms. Williams

1

alleged that her supervisors created a racially hostile work environment by calling her "the help" three times.  Dkt. 138 at 2–4.

The Court held a final pretrial conference ("FPTC") on January 15, 2026, and a jury trial on that claim on February 5, 2026.  Dkt. 187; dkt. 189.  Before the FPTC, the parties filed potential trial exhibits; Ms. Williams submitted sixteen exhibits and the Postmaster submitted three.  Dkt. 162.

During the FPTC, the Court discussed trial issues, procedures, and exhibits.  Dkt. 187 (FPTC trans.).  The Postmaster did not object to three of Ms. Williams's exhibits and Ms. Williams objected to none of the Postmaster's, so those exhibits were deemed stipulated.  *Id.* at 22–23.  When discussing the objected-to exhibits, the Court reserved ruling on the exhibits' admissibility for trial but did note that "the majority of [Ms. Williams's] exhibits seem like they are inadmissible, either for not being relevant, for not having probative value, [or for] being hearsay."  *Id.* at 32.  The Court explained the process of admitting an exhibit at trial, stating that each time Ms. Williams sought to admit an exhibit she would have to lay foundation and then move to admit the exhibit.  *Id.* at 32–36.

At trial, Ms. Williams attempted to introduce five pages from USPS's organizational manual as an exhibit.  Dkt. 189 at 93–95 (Trial trans.).  The Postmaster objected and the Court sustained this objection.  *Id.* at 95–96.  After both parties rested, the Court excused the jury and held a conference with the parties.  *Id.* at 131.  Ms. Williams then asked about admitting additional exhibits, which the Postmaster objected to because the exhibits were

not admitted during the case-in-chief.  *Id.* at 131–32.  The Court sustained this objection.  *Id.* at 132–34.

The jury reached a unanimous verdict in favor of the Postmaster on Ms. Williams's hostile work environment claim.  Dkt. 178.  On March 4, 2026, Ms. Williams filed a Rule 59(a) motion for a new trial.  Dkt. 183.  She then filed a second, substantively identical motion on March 16, 2026.  Dkt. 185.

## II.
### Discussion

Ms. Williams argues that a new trial is warranted under Rule 59(a) because the Court impermissibly excluded her evidence from trial.  Dkt. 183 at 1–2; dkt. 185 at 1.

Under Rule 59(a), a court may "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  "A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party."  *Bowers v. Dart*, 1 F.4th 513, 521 (7th Cir. 2021).  An "erroneous exclusion of evidence warrants a new trial only if the error had a substantial and injurious effect or influence on the jury's decision."  *Anderson v. Raymond Corp.*, 61 F.4th 505, 508 (7th Cir. 2023); *see also* Fed. R. Civ. P. 61.

At trial in this case, Ms. Williams attempted to introduce one exhibit— pages from USPS's organizational manual—into evidence during her case-in-chief.  Dkt. 189 at 93–95.  The Court sustained the Postmaster's objection to

3

admitting this exhibit, on the grounds of hearsay, relevance, a lack of foundation, and because it was not previously disclosed to the Postmaster before trial. *Id.* at 95; *see also* dkt. 162 (pretrial exhibit list). The Court then asked Ms. Williams if she had any other evidence to introduce, to which she replied "[j]ust the evidence that was documented. That's it. No new evidence." *Id.* at 96. Ms. Williams asked if she would "be able to show the evidence that was documented," and the Court replied that she could "show it to the defense witnesses, but [she] couldn't show it to the jury unless it's admitted as an exhibit at trial." *Id.* Ms. Williams then rested her case. *Id.*

After both sides rested, Ms. Williams notified the Court that she had exhibits showing her "hours, routes, time punch in, punch out, and things like that." *Id.* at 131–32. The Postmaster objected to admitting these documents into evidence because they weren't admitted during the case-in-chief. *Id.* at 132. The Court sustained this objection, explaining that "[t]he exhibits would have to [have been] admitted at trial through the testimony of a witness . . . documents need to be authenticated, somebody has to say here is what this is, I recognize it, and I'm now using it in evidence in this case. And that hasn't been done." *Id.* at 133. The Court then reasoned that even if the exhibits were authenticated, Ms. Williams's time sheets and route logs didn't seem to relate to her race-based hostile work environment claim. *Id.* at 134. So, the Court continued, "to the extent that [the evidence] has some probative value, it is outweighed by the likelihood of confusion, the fact that it doesn't have to do with the issues in this case." *Id.*

Ms. Williams now argues that the Court improperly excluded her evidence because it was not "separately docketed."  Dkt. 183 at 1–2; dkt. 185 at 1.  Her proposed exhibits include her "work time sheets, route assignment records, evidence supporting [her] claim that the mail was missorted by another employer, and evidence showing [that she] was placed on multiple routes."  Dkt. 183 at 1–2; dkt. 185 at 1–2.  She argues that excluding this evidence influenced the jury's verdict because the exhibits relate to the Postmaster's "main defense that [she] failed to progress" in meeting her job responsibilities.  Dkt. 183 at 3; dkt. 185 at 2.

Ms. Williams's argument that the Court improperly excluded her evidence because it was not docketed is unsupported by the record.  As explained, the Court's primary reason for not sending these exhibits to the jury was that the exhibits had not been admitted into evidence.  Dkt. 198 at 132–33.  Ms. Williams doesn't challenge this determination; and this ground for exclusion was not erroneous because "the general rule is that materials not admitted into evidence simply should not be sent to the jury to use in its deliberations."  *Baugh ex rel. Baugh v. Cuprum S.A. de C.V.*, 730 F.3d 701, 709 (7th Cir. 2013)*; see also Lindsey v. Macias*, 907 F.3d 517, 522 (7th Cir. 2018) (explaining that the court "could have abused its discretion" by sending a document "never moved or admitted into evidence" to the jury).

The Court also reinforced its exclusionary ruling by performing a Rule 403 balancing test.  Dkt. 189 at 134; *see* Fed. R. Evid. 403.  Ms. Williams also does not challenge this determination.  *See* dkt. 183; dkt. 185.  But even if this

evidence was admissible, and the ruling was therefore erroneous, Ms. Williams hasn't shown that the exclusion had a "substantial and injurious effect or influence on the jury's decision." *Anderson*, 61 F.4th at 708.

Ms. Williams first argues that the route logs and time stamps would have demonstrated a hostile and severe work environment by showing "[d]esperate work assignments compared to other employees" and "[u]nreasonable performance expectations." Dkt. 183 at 2–3; dkt. 185 at 2. It is possible that the jury could have viewed the alleged desperate work conditions and unreasonable expectations as a form of harassment. But a critical aspect of a racial hostile work environment claim is that the harassment was "based on h[er] race." Dkt. 138 at 3 (USCA Mandate). And Ms. Williams did not explain at trial or in her post-judgment motions the connection between the working conditions she faced and her race. *See* dkt 189 at 131–34; dkt. 183; dkt. 185. Without showing such connection, Ms. Williams has not demonstrated that the jury's outcome on her race-based hostile work environment claim was impacted by the exhibits' exclusion.

Ms. Williams also argues that time stamps and route logs related "directly to defendant's main defense that [she] failed to progress" and would have shown "[r]etalitory or discriminatory termination." Dkt. 183 at 3; dkt. 185 at 2. But the Postmaster's defense at trial was that she was not subjected to racially hostile work environment, not that she failed to progress. *See* dkt. 189 at 144–51 (Postmaster's closing argument). Moreover, Ms. Williams's arguments about a failure to progress and retaliatory or discriminatory

discharge seem to relate to her wrongful termination claims, which were decided, and affirmed, on summary judgment instead of her race-based hostile work environment claim that proceeded to trial.  *See* dkt. 138 at 4–5 (USCA Mandate).

Last, Ms. Williams argues that the excluded exhibits would have "[c]orroborat[ed] [the] racial remarks and discriminatory treatment."  Dkt. 183 at 3; dkt. 185 at 2.  But it is not apparent from the face of her work time sheets and route logs of how they corroborate her claim that her supervisors at the Postal Service called her "the help."  *See* dkt. 183 at 2–3; dkt. 183-1 at 2–5. Ms. Williams offers no additional explanation of how these exhibits corroborate her allegations of discriminatory treatment, so this unsupported statement alone does not show that the jury's decision was influenced by the evidentiary ruling.

In sum, Ms. Williams has not shown that the exclusion of her exhibits was substantially prejudicial to her case.[1]  Her motions for a new trial, dkt. [183], dkt. [185], are therefore **DENIED.**

**SO ORDERED.**

Date: 8/4/2026

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

---

[1] The Court does not understand Ms. Williams to argue that the jury's verdict is against the manifest weight of the evidence.  She mentions this standard only in reciting the Rule 59(a) standard.  *See* dkt. 183 at 2; dkt. 185 at 1.  Any such argument is therefore waived.  *See Willis v. Lepine*, 687 F.3d 826, 837 (7th Cir. 2012) ("[B]ecause the plaintiffs failed to advance any argument that the jury's verdict was against the manifest weight of the evidence, the district court did not err in refusing to consider the trial evidence under that standard."); *Shipley v. Chicago Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020).

Distribution:

BASEEMAH WILLIAMS
526 North Ave East
Apt. #101
Westfield, NJ 07090

All electronically registered counsel